# Exhibit A

| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | (2/28/11) CCG N001 |

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, Law _____ DIVISION

**16L . 5658**

No. _____

Margaret Nettleton, M.D.

Noely Palencia and Marvin Palencia
_____
(Name all parties)

370 Covington Dr

v.

Barrington, IL 60010

St. Alexius Medical Center, et al
_____

## ⊙ SUMMONS ○ ALIAS SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

⊙ Richard J. Daley Center, 50 W. Washington, Room 801 _____, Chicago, Illinois 60602

| ○ | District 2 - Skokie | ○ | District 3 - Rolling Meadows | ○ | District 4 - Maywood |
|---|---|---|---|---|---|
| | 5600 Old Orchard Rd. | | 2121 Euclid | | 1500 Maybrook Ave. |
| | Skokie, IL 60077 | | Rolling Meadows, IL 60008 | | Maywood, IL 60153 |

| ○ | District 5 - Bridgeview | ○ | District 6 - Markham | ○ | Child Support |
|---|---|---|---|---|---|
| | 10220 S. 76th Ave. | | 16501 S. Kedzie Pkwy. | | 28 North Clark St., Room 200 |
| | Bridgeview, IL 60455 | | Markham, IL 60428 | | Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 24797

Name: Kralovec, Jambois & Schwartz

Atty. for: Plaintiffs

Address: 60 W. Randolph St. 4th Floor

City/State/Zip: Chicago, IL 60601

Telephone: 312-782-2525

WITNESS, _____ JUN - 7 2016

_____

Clerk of Court   DOROTHY BROWN
CLERK OF CIRCUIT COURT

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)  (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

NOELY PALENCIA and MARVIN PALENCIA )
                                        )
       Plaintiffs, )
                                        )
vs.                                )     No.
                                         )
ST. ALEXIUS MEDICAL CENTER, )
MIDWEST OBSTETRICS & GYNECOLOGY, S.C., )
MICHAEL J. RIERMAIER, M.D., J.D., S.C., )
MARGARET NETTLETON, M.D. )
MICHAEL RIERMAIER, M.D., and )
CANDYCE GEARHART, R.N., )
                                         )
       Defendants. )

## COMPLAINT AT LAW

### COUNT I- MARGARET NETTLETON, M.D.
(Medical Negligence – NOELY PALENCIA)

NOW COMES the Plaintiff, **NOELY PALENCIA**, by and through her attorneys, **KRALOVEC, JAMBOIS & SCHWARTZ**, and complaining of the Defendant, **MARGARET NETTLETON, M.D.**, states as follows:

1.    On and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **MARGARET NETTLETON, M.D.**, was a licensed physician in the State of Illinois, who practiced her profession at various healthcare facilities and institutions in and throughout the County of Cook, State of Illinois.

2.    On and prior to July 10, 2014 and at all times relevant hereto, the Defendant, **MARGARET NETTLETON, M.D.**, offered gynecological and obstetric services to the public and to the Plaintiff, **NOELY PALENCIA.**

1

3.    On or about July 10, 2014, and at all times relevant hereto, the Defendant, **MARGARET NETTLETON, M.D.,** accepted the Plaintiff, **NOELY PALENCIA,** as her patient and undertook to diagnose and treat the condition from which she suffered.

4.    On and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **MARGARET NETTLETON, M.D.,** was an agent, servant, and/or employee, whether actual or apparent, of the Defendant(s), **ST. ALEXIUS MEDICAL CENTER** and/or **MIDWEST OBSTETRICS & GYNECOLOGY, S.C.,** and at all times relevant hereto, acted within the scope of that agency and/or employment.

5.    On or about July 9, 2014 at approximately 03:00, **NOELY PALENCIA** went into labor. She was 27-years old and 39 weeks and 6 days pregnant with her first child. Her prenatal course was unremarkable.

6.    On July 9, 2014 at approximately 22:50, **NOELY PALENCIA** was admitted to **ST. ALEXIUS MEDICAL CENTER** while still in early labor.

7.    On July 10, 2014 at approximately 11:20, Pitocin was administered to assist in the progression of labor.

8.    On July 10, 2014 at approximately 15:12, **NOELY PALENCIA** received a labor epidural.

9.    On July 10, 2014 at approximately 18:09, when **NOELY PALENCIA** was dilated to approximately 8 cm, artificial rupture of membranes was performed.

10.   On July 10, 2014 at approximately 19:45, **NOELY PALENCIA** reached complete cervical dilation. **NOELY PALENCIA** then began to push when the fetal occiput was at the -1 station.

2

11.     When the fetal occiput was at the -1 station, the Defendant, **CANDYCE GEARHART, R.N.**, applied aggressive perineal massage that resulted in an arterial rupture as documented in the operative summary.

12.     When the fetal head was at the +2 station, **NOELY PALENCIA** was bleeding heavily and **MARGARET NETTLETON's** attempts to repair **NOELY PALENCIA's** perineal laceration were unsuccessful.

13.     At the above-referenced time and place, **MARGARET NETTLETON, M.D.** called in the house officer, **MICHAEL RIERMAIER, M.D.**, for assistance. **NOELY PALENCIA** had been pushing for less than 50 minutes and the baby was not in distress when **MICHAEL RIERMAIER, M.D.** arrived.

14.     At the above-referenced time and place, the Defendants, **MARGARET NETTLETON, M.D.** and **MICHAEL RIERMAIER, M.D.**, performed an operative delivery using forceps.

15.     The female baby was delivered in cephalic position at 20:37 on July 10, 2014. She weighed 7 pounds 10 ounces, was 20.87 inches in length and had APGARS scores of 9 at both 1 minute and 5 minutes.

16.     Following delivery, Defendants **MARGARET NETTLETON, M.D.** and **MICHAEL RIERMAIER, M.D.** applied multiple sutures to **NOELY PALENCIA'S** vaginal laceration in the labor and delivery room and packed the vagina with Kerlix.

17.     Due to the severity of her vaginal laceration and nature of repair performed, **NOELY PALENCIA** was not discharged from **ST. ALEXIUS MEDICAL CENTER** until July 13, 2014.

3

18. On September 24, 2014, **NOELY PALENCIA** was admitted to **ST. ALEXIUS MEDICAL CENTER** for surgery related to the vaginal laceration she sustained during delivery in July of 2014.

19. At the above time and place, **NOELY PALENCIA'S** admission diagnosis was vaginal stenosis secondary to scarring from extensive vaginal laceration at the time of vaginal delivery.

20. At the above time and place, **MARGARET NETTLETON, M.D.** performed a revision of vaginal scarring and laceration repair.

21. At the above time and place, the following observations were documented by **MARGARET NETTLETON, M.D.** in her operative report:

    i. Anteriorly there was a fibrous band of scar tissue from 9 o'clock to 3 o'clock;

    ii. Posteriorly there was a fibrous band of scar tissue from 9 o'clock to 3 o'clock; and

    iii. There was only a small orifice between the anterior and posterior fibrous bands.

22. At all times relevant hereto, there existed a duty on the part of the Defendant, **MARGARET NETTLETON, M.D.,** to possess and apply the skill and knowledge of a reasonably well-qualified physician specializing in obstetrics & gynecology, and to provide care and treatment to **NOELY PALENCIA** in a manner which equaled or exceeded the applicable standard of care.

23. In disregarding her duty, the Defendant, **MARGARET NETTLETON, M.D.,** was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

4

        a. Failed to properly supervise the nursing staff;

        b. Inappropriately performed an operative delivery; and

        c. Failed to perform a proper repair of the patient's vaginal laceration

24. That as a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions on the part of the Defendant, **MARGARET NETTLETON, M.D.,** the Plaintiff, **NOELY PALENCIA,** sustained severe and permanent injuries resulting in personal and pecuniary loss.

**WHEREFORE,** the Plaintiff, **NOELY PALENCIA,** prays for judgment against the Defendant, **MARGARET NETTLETON, M.D.,** in such amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate the Plaintiff for the injuries, losses and damages as hereinabove alleged.

### COUNT II- MARGARET NETTLETON, M.D.
(Loss of Consortium – MARVIN PALENCIA)

**NOW COMES** the Plaintiff, **MARVIN PALENCIA,** by and through his attorneys, **KRALOVEC, JAMBOIS & SCHWARTZ,** and complaining of the Defendant, **MARGARET NETTLETON, M.D.,** states as follows:

1-24. That the Plaintiff, **MARVIN PALENCIA,** hereby re-alleges and incorporates paragraphs 1 through 24 of Count I as and for paragraphs 1 through 24 of this Count II as though fully set forth herein.

25. That on and before July 10, 2014, the Plaintiff, **MARVIN PALENCIA,** was and continues to be the lawfully wedded husband of **NOELY PALENCIA.**

26. That as a result of the injuries and damages sustained by **NOELY PALENCIA** on July 10, 2014, the Plaintiff, **MARVIN PALENCIA,** has in the past and will in the future be

5

deprived of the past and future earnings, society, companionship and sexual relationship of his wife, **NOELY PALENCIA.**

**WHEREFORE,** the Plaintiff, **MARVIN PALENCIA,** prays for judgment against the Defendant, **MARGARET NETTLETON, M.D.,** in such amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate the Plaintiff for the injuries, losses and damages as hereinabove alleged.

### COUNT III- MICHAEL RIERMAIER, M.D.
(Medical Negligence – NOELY PALENCIA)

**NOW COMES** the Plaintiff, **NOELY PALENCIA,** by and through her attorneys, **KRALOVEC, JAMBOIS & SCHWARTZ,** and complaining of the Defendant, **MICHAEL RIERMAIER, M.D.,** states as follows:

1.       On and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **MICHAEL RIERMAIER, M.D.,** was a licensed physician in the State of Illinois, who practiced his profession at various healthcare facilities and institutions in and throughout the County of Cook, State of Illinois.

2.       On and prior to July 10, 2014 and at all times relevant hereto, the Defendant, **MICHAEL RIERMAIER, M.D.,** offered gynecological and obstetric services to the public and to the Plaintiff, **NOELY PALENCIA.**

3.       On or about July 10, 2014, and at all times relevant hereto, the Defendant, **MICHAEL RIERMAIER, M.D.,** accepted the Plaintiff, **NOELY PALENCIA,** as his patient and undertook to diagnose and treat the condition from which she suffered.

4.       On and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **MICHAEL RIERMAIER, M.D.,** was an agent, servant, and/or employee, whether actual or apparent, of the Defendant(s), **ST. ALEXIUS MEDICAL CENTER** and/or **MICHAEL**

6

RIERMAIER, M.D., J.D., S.C., and at all times relevant hereto, acted within the scope of that agency and/or employment.

5.    On or about July 9, 2014 at approximately 03:00, **NOELY PALENCIA** went into labor. She was 27-years old and 39 weeks and 6 days pregnant with her first child. Her prenatal course was unremarkable.

6.    On July 9, 2014 at approximately 22:50, **NOELY PALENCIA** was admitted to **ST. ALEXIUS MEDICAL CENTER** while still in early labor.

7.    On July 10, 2014 at approximately 11:20, Pitocin was administered to assist in the progression of labor.

8.    On July 10, 2014 at approximately 15:12, **NOELY PALENCIA** received a labor epidural.

9.    On July 10, 2014 at approximately 18:09, when **NOELY PALENCIA** was dilated to approximately 8 cm, artificial rupture of membranes was performed.

10.    On July 10, 2014 at approximately 19:45, **NOELY PALENCIA** reached complete cervical dilation. **NOELY PALENCIA** then began to push when the fetal occiput was at the -1 station.

11.    When the fetal occiput was at the -1 station, the Defendant, **CANDYCE GEARHART, R.N.**, applied aggressive perineal massage that resulted in an arterial rupture as documented in the operative summary.

12.    When the fetal head was at the +2 station, **NOELY PALENCIA** was bleeding heavily and **MARGARET NETTLETON's** attempts to repair **NOELY PALENCIA's** perineal laceration were unsuccessful.

13.    At the above-referenced time and place, **MARGARET NETTLETON, M.D.** called in the house officer, **MICHAEL RIERMAIER, M.D.,** for assistance. **NOELY PALENCIA** had been pushing for less than 50 minutes and the baby was not in distress when **MICHAEL RIERMAIER, M.D.** arrived.

14.    At the above-referenced time and place, the Defendants, **MARGARET NETTLETON, M.D.** and **MICHAEL RIERMAIER, M.D.,** performed an operative delivery using forceps.

15.    The female baby was delivered in cephalic position at 20:37 on July 10, 2014. She weighed 7 pounds 10 ounces, was 20.87 inches in length and had APGARS scores of 9 at both 1 minute and 5 minutes.

16.    Following delivery, Defendants **MARGARET NETTLETON, M.D.** and **MICHAEL RIERMAIER, M.D.** applied multiple sutures to **NOELY PALENCIA'S** vaginal laceration in the labor and delivery room and packed the vagina with Kerlix.

17.    Due to the severity of her vaginal laceration and nature of repair performed, **NOELY PALENCIA** was not discharged from **ST. ALEXIUS MEDICAL CENTER** until July 13, 2014.

18.    On September 24, 2014, **NOELY PALENCIA** was admitted to **ST. ALEXIUS MEDICAL CENTER** for surgery related to the vaginal laceration she sustained during delivery in July of 2014.

19.    At the above time and place, **NOELY PALENCIA'S** admission diagnosis was vaginal stenosis secondary to scarring from extensive vaginal laceration at the time of vaginal delivery.

8

20.   At the above time and place, **MARGARET NETTLETON, M.D.** performed a revision of vaginal scarring and laceration repair.

21.   At the above time and place, the following observations were documented by **MARGARET NETTLETON, M.D.** in her operative report:

  i.   Anteriorly there was a fibrous band of scar tissue from 9 o'clock to 3 o'clock;

  ii.  Posteriorly there was a fibrous band of scar tissue from 9 o'clock to 3 o'clock; and

  iii. There was only a small orifice between the anterior and posterior fibrous bands.

22.   At all times relevant hereto, there existed a duty on the part of the Defendant, **MICHAEL RIERMAIER, M.D.,** to possess and apply the skill and knowledge of a reasonably well-qualified physician specializing in obstetrics & gynecology, and to provide care and treatment to **NOELY PALENCIA** in a manner which equaled or exceeded the applicable standard of care.

23.   In disregarding his duty, the Defendant, **MICHAEL RIERMAIER, M.D.,** was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

  a.   Failed to properly supervise the nursing staff;

  b.   Inappropriately performed an operative delivery; and

  c.   Failed to perform a proper repair of the patient's vaginal laceration.

24.   That as a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions on the part of the Defendant, **MICHAEL RIERMAIER, M.D.,**

9

the Plaintiff, **NOELY PALENCIA**, sustained severe and permanent injuries resulting in personal and pecuniary loss.

**WHEREFORE**, the Plaintiff, **NOELY PALENCIA**, prays for judgment against the Defendant, **MICHAEL RIERMAIER, M.D.**, in such amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate the Plaintiff for the injuries, losses and damages as hereinabove alleged.

### COUNT IV- MICHAEL RIERMAIER, M.D.
(Loss of Consortium – MARVIN PALENCIA)

**NOW COMES** the Plaintiff, **MARVIN PALENCIA**, by and through his attorneys, **KRALOVEC, JAMBOIS & SCHWARTZ**, and complaining of the Defendant, **MICHAEL RIERMAIER, M.D.**, states as follows:

1-24.   That the Plaintiff, **MARVIN PALENCIA**, hereby re-alleges and incorporates paragraphs 1 through 24 of Count III as and for paragraphs 1 through 24 of this Count IV as though fully set forth herein.

25.   That on and before July 10, 2014, the Plaintiff, **MARVIN PALENCIA**, was and continues to be the lawfully wedded husband of **NOELY PALENCIA**.

26.   That as a result of the injuries and damages sustained by **NOELY PALENCIA** on July 10, 2014, the Plaintiff, **MARVIN PALENCIA**, has in the past and will in the future be deprived of the past and future earnings, society, companionship and sexual relationship of his wife, **NOELY PALENCIA**.

**WHEREFORE**, the Plaintiff, **MARVIN PALENCIA**, prays for judgment against the Defendant, **MICHAEL RIERMAIER, M.D.**, in such amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate the Plaintiff for the injuries, losses and damages as hereinabove alleged.

10

### COUNT V- ST. ALEXIUS MEDICAL CENTER
(Medical Negligence – NOELY PALENCIA)

NOW COMES the Plaintiff, **NOELY PALENCIA**, by and through her attorneys, **KRALOVEC, JAMBOIS & SCHWARTZ**, and complaining of the Defendant, **ST. ALEXIUS MEDICAL CENTER**, states as follows:

     1.     That on and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **ST. ALEXIUS MEDICAL CENTER**, was a healthcare facility offering medical and Anesthesia services to the public at facilities located throughout the County of Cook and Lake and State of Illinois.

     2.     That on and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **ST. ALEXIUS MEDICAL CENTER**, by and through its agents, servants, and/or employees, whether actual or apparent, including but not limited to **MARGARET NETTLETON, M.D., MICHAEL RIERMAIER, M.D.** and/or **CANDYCE GEARHART, R.N.**, undertook to provide medical and obstetrics and gynecological care and treatment to the public and to the Plaintiff, **NOELY PALENCIA**, at facilities located in the County of Cook, State of Illinois.

     3.     That on and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **MARGARET NETTLETON, M.D.**, was an agent, servant and/or employee, whether actual or apparent, of the Defendant, **ST. ALEXIUS MEDICAL CENTER**.

     4.     That on and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **MICHAEL RIERMAIER, M.D.**, was an agent, servant and/or employee, whether actual or apparent, of the Defendant, **ST. ALEXIUS MEDICAL CENTER**.

     5.     That on and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **CANDYCE GEARHART, R.N.**, was an agent, servant and/or employee, whether actual or apparent, of the Defendant, **ST. ALEXIUS MEDICAL CENTER**.

11

6.    On or about July 9, 2014 at approximately 03:00, **NOELY PALENCIA** went into labor. She was 27-years old and 39 weeks and 6 days pregnant with her first child. Her prenatal course was unremarkable.

7.    On July 9, 2014 at approximately 22:50, **NOELY PALENCIA** was admitted to **ST. ALEXIUS MEDICAL CENTER** while still in early labor.

8.    On July 10, 2014 at approximately 11:20, Pitocin was administered to assist in the progression of labor.

9.    On July 10, 2014 at approximately 15:12, **NOELY PALENCIA** received a labor epidural.

10.    On July 10, 2014 at approximately 18:09, when **NOELY PALENCIA** was dilated to approximately 8 cm, artificial rupture of membranes was performed.

11.    On July 10, 2014 at approximately 19:45, **NOELY PALENCIA** reached complete cervical dilation. **NOELY PALENCIA** then began to push when the fetal occiput was at the -1 station.

12.    When the fetal occiput was at the -1 station, the Defendant, **CANDYCE GEARHART, R.N.**, applied aggressive perineal massage that resulted in an arterial rupture as documented in the operative summary.

13.    When the fetal head was at the +2 station, **NOELY PALENCIA** was bleeding heavily and **MARGARET NETTLETON's** attempts to repair **NOELY PALENCIA's** perineal laceration were unsuccessful.

14.    At the above-referenced time and place, **MARGARET NETTLETON, M.D.** called in the house officer, **MICHAEL RIERMAIER, M.D.**, for assistance. **NOELY**

12

PALENCIA had been pushing for less than 50 minutes and the baby was not in distress when MICHAEL RIERMAIER, M.D. arrived.

15.    At the above-referenced time and place, the Defendants, MARGARET NETTLETON, M.D. and MICHAEL RIERMAIER, M.D., performed an operative delivery using forceps.

16.    The female baby was delivered in cephalic position at 20:37 on July 10, 2014. She weighed 7 pounds 10 ounces, was 20.87 inches in length and had APGARS scores of 9 at both 1 minute and 5 minutes.

17.    Following delivery, Defendants MARGARET NETTLETON, M.D. and MICHAEL RIERMAIER, M.D. applied multiple sutures to NOELY PALENCIA'S vaginal laceration in the labor and delivery room and packed the vagina with Kerlix.

18.    Due to the severity of her vaginal laceration and nature of repair performed, NOELY PALENCIA was not discharged from ST. ALEXIUS MEDICAL CENTER until July 13, 2014.

19.    On September 24, 2014, NOELY PALENCIA was admitted to ST. ALEXIUS MEDICAL CENTER for surgery related to the vaginal laceration she sustained during delivery in July of 2014.

20.    At the above time and place, NOELY PALENCIA'S admission diagnosis was vaginal stenosis secondary to scarring from extensive vaginal laceration at the time of vaginal delivery.

21.    At the above time and place, MARGARET NETTLETON, M.D. performed a revision of vaginal scarring and laceration repair.

13

22.     At the above time and place, the following observations were documented by **MARGARET NETTLETON, M.D.** in her operative report:

   i.   Anteriorly there was a fibrous band of scar tissue from 9 o'clock to 3 o'clock;

   ii.  Posteriorly there was a fibrous band of scar tissue from 9 o'clock to 3 o'clock; and

   iii. There was only a small orifice between the anterior and posterior fibrous bands.

23.     That at all times relevant hereto, there existed a duty on the part of the Defendant, **ST. ALEXIUS MEDICAL CENTER,** to employ and utilize appropriate and adequate healthcare professionals, facilities and treatment for its patients and to safeguard its patients from negligent care that might be rendered by medical personnel in its employ and/or utilizing its facilities.

24.     That in disregarding its duty, the Defendant, **ST. ALEXIUS MEDICAL CENTER,** by and through its agents, servants, and/or employees, whether actual or apparent, including but not limited to **MARGARET NETTLETON, M.D., MICHAEL RIERMAIER, M.D.,** and **CANDYCE GEARHART, R.N.,** was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

   a.   Failed to properly supervise the nursing staff;

   b.   Inappropriately performed an operative delivery;

   c.   Failed to perform a proper repair of the patient's vaginal laceration; and

   d.   Improperly performed perineal massage resulting in arterial laceration.

25.     That as a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions on the part of the Defendant, the Defendant, **ST. ALEXIUS**

14

MEDICAL CENTER, by and through its agents, servants, and/or employees, whether actual or apparent, including but not limited to MARGARET NETTLETON, M.D., MICHAEL RIERMAIER, M.D., and CANDYCE GEARHART, R.N., the Plaintiff, NOELY PALENCIA, sustained severe and permanent injuries resulting in personal and pecuniary loss.

WHEREFORE, the Plaintiff, NOELY PALENCIA, prays for judgment against the Defendant, ST. ALEXIUS MEDICAL CENTER, in such amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate the Plaintiff for the injuries, losses and damages as hereinabove alleged.

**COUNT VI- ST. ALEXIUS MEDICAL CENTER**
(Loss of Consortium – MARVIN PALENCIA)

NOW COMES the Plaintiff, MARVIN PALENCIA, by and through his attorneys, KRALOVEC, JAMBOIS & SCHWARTZ, and complaining of the Defendant, ST. ALEXIUS MEDICAL CENTER, states as follows:

1-25. That the Plaintiff, MARVIN PALENCIA, hereby re-alleges and incorporates paragraphs 1 through 25 of Count V as and for paragraphs 1 through 25 of this Count VI as though fully set forth herein.

26. That on and before July 10, 2014, the Plaintiff, MARVIN PALENCIA, was and continues to be the lawfully wedded husband of NOELY PALENCIA.

27. That as a result of the injuries and damages sustained by NOELY PALENCIA on July 10, 2014, the Plaintiff, MARVIN PALENCIA, has in the past and will in the future be deprived of the past and future earnings, society, companionship and sexual relationship of his wife, NOELY PALENCIA.

WHEREFORE, the Plaintiff, MARVIN PALENCIA, prays for judgment against the Defendant, ST. ALEXIUS MEDICAL CENTER, in such amount in excess of this Court's

15

jurisdictional requisite as will fairly and adequately compensate the Plaintiff for the injuries, losses and damages as hereinabove alleged.

## COUNT VII - MIDWEST OBSTETRICS & GYNECOLOGY, S.C.
(Medical Negligence – NOELY PALENCIA)

NOW COMES the Plaintiff, **NOELY PALENCIA**, by and through her attorneys, **KRALOVEC, JAMBOIS & SCHWARTZ**, and complaining of the Defendant, **MIDWEST OBSTETRICS & GYNECOLOGY, S.C.**, states as follows:

1.  That on and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **ST. ALEXIUS MEDICAL CENTER**, was a physician group offering medical and Anesthesia services to the public at facilities located throughout the County of Cook and Lake and State of Illinois.

2.  That on and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **MIDWEST OBSTETRICS & GYNECOLOGY, S.C.**, by and through its agent, servant, and/or employee, whether actual or apparent, including but not limited to **MARGARET NETTLETON, M.D.**, undertook to provide medical and obstetrics and gynecological care and treatment to the public and to the Plaintiff, **NOELY PALENCIA**, at facilities located in the County of Cook, State of Illinois.

3.  That on and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **MARGARET NETTLETON, M.D.**, was an agent, servant and/or employee, whether actual or apparent, of the Defendant, **MIDWEST OBSTETRICS & GYNECOLOGY, S.C.**

4.  On or about July 9, 2014 at approximately 03:00, **NOELY PALENCIA** went into labor. She was 27-years old and 39 weeks and 6 days pregnant with her first child. Her prenatal course was unremarkable.

16

5.     On July 9, 2014 at approximately 22:50, **NOELY PALENCIA** was admitted to **ST. ALEXIUS MEDICAL CENTER** while still in early labor.

6.     On July 10, 2014 at approximately 11:20, Pitocin was administered to assist in the progression of labor.

7.     On July 10, 2014 at approximately 15:12, **NOELY PALENCIA** received a labor epidural.

8.     On July 10, 2014 at approximately 18:09, when **NOELY PALENCIA** was dilated to approximately 8 cm, artificial rupture of membranes was performed.

9.     On July 10, 2014 at approximately 19:45, **NOELY PALENCIA** reached complete cervical dilation. **NOELY PALENCIA** then began to push when the fetal occiput was at the -1 station.

10.     When the fetal occiput was at the -1 station, the Defendant, **CANDYCE GEARHART, R.N.,** applied aggressive perineal massage that resulted in an arterial rupture as documented in the operative summary.

11.     When the fetal head was at the +2 station, **NOELY PALENCIA** was bleeding heavily and **MARGARET NETTLETON's** attempts to repair **NOELY PALENCIA's** perineal laceration were unsuccessful.

12.     At the above-referenced time and place, **MARGARET NETTLETON, M.D.** called in the house officer, **MICHAEL RIERMAIER, M.D.,** for assistance. **NOELY PALENCIA** had been pushing for less than 50 minutes and the baby was not in distress when **MICHAEL RIERMAIER, M.D.** arrived.

13. At the above-referenced time and place, the Defendants, **MARGARET NETTLETON, M.D.** and **MICHAEL RIERMAIER, M.D.**, performed an operative delivery using forceps.

14. The female baby was delivered in cephalic position at 20:37 on July 10, 2014. She weighed 7 pounds 10 ounces, was 20.87 inches in length and had APGARS scores of 9 at both 1 minute and 5 minutes.

15. Following delivery, Defendants **MARGARET NETTLETON, M.D.** and **MICHAEL RIERMAIER, M.D.** applied multiple sutures to **NOELY PALENCIA'S** vaginal laceration in the labor and delivery room and packed the vagina with Kerlix.

16. Due to the severity of her vaginal laceration and nature of repair performed, **NOELY PALENCIA** was not discharged from **ST. ALEXIUS MEDICAL CENTER** until July 13, 2014.

17. On September 24, 2014, **NOELY PALENCIA** was admitted to **ST. ALEXIUS MEDICAL CENTER** for surgery related to the vaginal laceration she sustained during delivery in July of 2014.

18. At the above time and place, **NOELY PALENCIA'S** admission diagnosis was vaginal stenosis secondary to scarring from extensive vaginal laceration at the time of vaginal delivery.

19. At the above time and place, **MARGARET NETTLETON, M.D.** performed a revision of vaginal scarring and laceration repair.

20. At the above time and place, the following observations were documented by **MARGARET NETTLETON, M.D.** in her operative report:

18

      i.   Anteriorly there was a fibrous band of scar tissue from 9 o'clock to 3 o'clock;

     ii.   Posteriorly there was a fibrous band of scar tissue from 9 o'clock to 3 o'clock; and

    iii.   There was only a small orifice between the anterior and posterior fibrous bands.

21.    That at all times relevant hereto, there existed a duty on the part of the Defendant, **MIDWEST OBSTETRICS & GYNECOLOGY, S.C.,** to employ and utilize appropriate and adequate healthcare professionals, facilities and treatment for its patients and to safeguard its patients from negligent care that might be rendered by medical personnel in its employ and/or utilizing its facilities.

22.    That in disregarding its duty, the Defendant, **MIDWEST OBSTETRICS & GYNECOLOGY, S.C.,** by and through its agent, servant, and/or employee, whether actual or apparent, including but not limited to **MARGARET NETTLETON, M.D.,** was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

    a.   Failed to properly supervise the nursing staff;

    b.   Inappropriately performed an operative delivery; and

    c.   Failed to perform a proper repair of the patient's vaginal laceration.

23.    That as a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions on the part of the Defendant, **MIDWEST OBSTETRICS & GYNECOLOGY, S.C.,** by and through its agent, servant, and/or employee, whether actual or apparent, including but not limited to **MARGARET NETTLETON, M.D.,** the Plaintiff,

**NOELY PALENCIA,** sustained severe and permanent injuries resulting in personal and pecuniary loss.

WHEREFORE, the Plaintiff, **NOELY PALENCIA,** prays for judgment against the Defendant, **MIDWEST OBSTETRICS & GYNECOLOGY, S.C.,** in such amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate the Plaintiff for the injuries, losses and damages as hereinabove alleged.

<u>COUNT VIII- MIDWEST OBSTETRICS & GYNECOLOGY, S.C.</u>
(Loss of Consortium – MARVIN PALENCIA)

NOW COMES the Plaintiff, **MARVIN PALENCIA,** by and through his attorneys, **KRALOVEC, JAMBOIS & SCHWARTZ,** and complaining of the Defendant, **MIDWEST OBSTETRICS & GYNECOLOGY, S.C.,** states as follows:

1-23. That the Plaintiff, **MARVIN PALENCIA,** hereby re-alleges and incorporates paragraphs 1 through 23 of Count VII as and for paragraphs 1 through 23 of this Count VIII as though fully set forth herein.

24. That on and before July 10, 2014, the Plaintiff, **MARVIN PALENCIA,** was and continues to be the lawfully wedded husband of **NOELY PALENCIA.**

25. That as a result of the injuries and damages sustained by **NOELY PALENCIA** on July 10, 2014, the Plaintiff, **MARVIN PALENCIA,** has in the past and will in the future be deprived of the past and future earnings, society, companionship and sexual relationship of his wife, **NOELY PALENCIA.**

WHEREFORE, the Plaintiff, **MARVIN PALENCIA,** prays for judgment against the Defendant, **MIDWEST OBSTETRICS & GYNECOLOGY, S.C.,** in such amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate the Plaintiff for the injuries, losses and damages as hereinabove alleged.

<u>COUNT IX – MICHAEL RIERMAIER, M.D., J.D., S.C.</u>
(Medical Negligence – NOELY PALENCIA)

**NOW COMES** the Plaintiff, **NOELY PALENCIA**, by and through her attorneys, **KRALOVEC, JAMBOIS & SCHWARTZ**, and complaining of the Defendant, **MICHAEL RIERMAIER, M.D., J.D., S.C.,** states as follows:

1.    That on and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **MICHAEL RIERMAIER, M.D., J.D., S.C.**, was a physician group offering medical and Anesthesia services to the public at facilities located throughout the County of Cook and Lake and State of Illinois.

2.    That on and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **MICHAEL RIERMAIER, M.D., J.D., S.C.**, by and through its agent, servant, and/or employee, whether actual or apparent, including but not limited to **MICHAEL RIERMAIER, M.D.**, undertook to provide medical and obstetrics and gynecological care and treatment to the public and to the Plaintiff, **NOELY PALENCIA**, at facilities located in the County of Cook, State of Illinois.

3.    That on and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **MICHAEL RIERMAIER, M.D.**, was an agent, servant and/or employee, whether actual or apparent, of the Defendant, **MICHAEL RIERMAIER, M.D., J.D., S.C.**

4.    On or about July 9, 2014 at approximately 03:00, **NOELY PALENCIA** went into labor. She was 27-years old and 39 weeks and 6 days pregnant with her first child. Her prenatal course was unremarkable.

5.    On July 9, 2014 at approximately 22:50, **NOELY PALENCIA** was admitted to **ST. ALEXIUS MEDICAL CENTER** while still in early labor.

6.    On July 10, 2014 at approximately 11:20, Pitocin was administered to assist in the progression of labor.

7.    On July 10, 2014 at approximately 15:12, **NOELY PALENCIA** received a labor epidural.

8.    On July 10, 2014 at approximately 18:09, when **NOELY PALENCIA** was dilated to approximately 8 cm, artificial rupture of membranes was performed.

9.    On July 10, 2014 at approximately 19:45, **NOELY PALENCIA** reached complete cervical dilation. **NOELY PALENCIA** then began to push when the fetal occiput was at the -1 station.

10.    When the fetal occiput was at the -1 station, the Defendant, **CANDYCE GEARHART, R.N.,** applied aggressive perineal massage that resulted in an arterial rupture as documented in the operative summary.

11.    When the fetal head was at the +2 station, **NOELY PALENCIA** was bleeding heavily and **MARGARET NETTLETON's** attempts to repair **NOELY PALENCIA's** perineal laceration were unsuccessful.

12.    At the above-referenced time and place, **MARGARET NETTLETON, M.D.** called in the house officer, **MICHAEL RIERMAIER, M.D.,** for assistance. **NOELY PALENCIA** had been pushing for less than 50 minutes and the baby was not in distress when **MICHAEL RIERMAIER, M.D.** arrived.

13.    At the above-referenced time and place, the Defendants, **MARGARET NETTLETON, M.D.** and **MICHAEL RIERMAIER, M.D.,** performed an operative delivery using forceps.

22

14.     The female baby was delivered in cephalic position at 20:37 on July 10, 2014. She weighed 7 pounds 10 ounces, was 20.87 inches in length and had APGARS scores of 9 at both 1 minute and 5 minutes.

15.     Following delivery, Defendants **MARGARET NETTLETON, M.D.** and **MICHAEL RIERMAIER, M.D.** applied multiple sutures to **NOELY PALENCIA'S** vaginal laceration in the labor and delivery room and packed the vagina with Kerlix.

16.     Due to the severity of her vaginal laceration and nature of repair performed, **NOELY PALENCIA** was not discharged from **ST. ALEXIUS MEDICAL CENTER** until July 13, 2014.

17.     On September 24, 2014, **NOELY PALENCIA** was admitted to **ST. ALEXIUS MEDICAL CENTER** for surgery related to the vaginal laceration she sustained during delivery in July of 2014.

18.     At the above time and place, **NOELY PALENCIA'S** admission diagnosis was vaginal stenosis secondary to scarring from extensive vaginal laceration at the time of vaginal delivery.

19.     At the above time and place, **MARGARET NETTLETON, M.D.** performed a revision of vaginal scarring and laceration repair.

20.     At the above time and place, the following observations were documented by **MARGARET NETTLETON, M.D.** in her operative report:

        i.  Anteriorly there was a fibrous band of scar tissue from 9 o'clock to 3 o'clock;

       ii.  Posteriorly there was a fibrous band of scar tissue from 9 o'clock to 3 o'clock; and

iii. There was only a small orifice between the anterior and posterior fibrous bands.

21. That at all times relevant hereto, there existed a duty on the part of the Defendant, **MICHAEL RIERMAIER, M.D., J.D., S.C.,** to employ and utilize appropriate and adequate healthcare professionals, facilities and treatment for its patients and to safeguard its patients from negligent care that might be rendered by medical personnel in its employ and/or utilizing its facilities.

22. That in disregarding its duty, the Defendant, **MICHAEL RIERMAIER, M.D., J.D., S.C.,** by and through its agent, servant, and/or employee, whether actual or apparent, including but not limited to **MICHAEL RIERMAIER, M.D.,** was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

      a. Failed to properly supervise the nursing staff;

      b. Inappropriately performed an operative; and

      c. Failed to perform a proper repair of the patient's vaginal laceration.

23. That as a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions on the part of t the Defendant, **MICHAEL RIERMAIER, M.D., J.D., S.C.,** by and through its agent, servant, and/or employee, whether actual or apparent, including but not limited to **MICHAEL RIERMAIER, M.D.,** the Plaintiff, **NOELY PALENCIA,** sustained severe and permanent injuries resulting in personal and pecuniary loss.

**WHEREFORE,** the Plaintiff, **NOELY PALENCIA,** prays for judgment against the Defendant, **MICHAEL RIERMAIER, M.D., J.D., S.C.,** in such amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate the Plaintiff for the injuries, losses and damages as hereinabove alleged.

24

## COUNT X- MICHAEL RIERMAIER, M.D., J.D., S.C.
(Loss of Consortium – MARVIN PALENCIA)

**NOW COMES** the Plaintiff, **MARVIN PALENCIA,** by and through his attorneys, **KRALOVEC, JAMBOIS & SCHWARTZ,** and complaining of the Defendant, **MICHAEL RIERMAIER, M.D., J.D., S.C.,** states as follows:

1-23. That the Plaintiff, **MARVIN PALENCIA,** hereby re-alleges and incorporates paragraphs 1 through 23 of Count IX as and for paragraphs 1 through 23 of this Count X as though fully set forth herein.

24. That on and before July 10, 2014, the Plaintiff, **MARVIN PALENCIA,** was and continues to be the lawfully wedded husband of **NOELY PALENCIA.**

25. That as a result of the injuries and damages sustained by **NOELY PALENCIA** on July 10, 2014, the Plaintiff, **MARVIN PALENCIA,** has in the past and will in the future be deprived of the past and future earnings, society, companionship and sexual relationship of his wife, **NOELY PALENCIA.**

**WHEREFORE,** the Plaintiff, **MARVIN PALENCIA,** prays for judgment against the Defendant, **MICHAEL RIERMAIER, M.D., J.D., S.C.,** in such amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate the Plaintiff for the injuries, losses and damages as hereinabove alleged.

## COUNT XI- CANDYCE GEARHART, R.N.
(Negligence – NOELY PALENCIA)

**NOW COMES** the Plaintiff, **NOELY PALENCIA,** by and through her attorneys, **KRALOVEC, JAMBOIS & SCHWARTZ,** and complaining of the Defendant, **CANDYCE GEARHART, R.N.,** states as follows:

25

1.     That on and prior to July 10, 2014, the Defendant, **CANDYCE GEARHART, R.N.,** was a licensed Registered Nurse in the State of Illinois, who practiced her profession at various healthcare facilities and institutions in and throughout the County of Cook and Lake and State of Illinois.

2.     That on and prior to July 10, 2014 and at all times relevant hereto, the Defendant, **CANDYCE GEARHART, R.N.,** offered nursing services to the public and to the Plaintiff, **NOELY PALENCIA.**

3.     That on or about July 10, 2014, and at all times relevant hereto, the Defendant, **CANDYCE GEARHART, R.N.,** accepted the Plaintiff, **NOELY PALENCIA,** as her patient and undertook to diagnose and treat the condition from which she suffered.

4.     That on and prior to July 10, 2014, and at all times relevant hereto, the Defendant, **CANDYCE GEARHART, R.N.,** was an agent, servant, and/or employee, whether actual or apparent, of the Defendant, **ST. ALEXIUS MEDICAL CENTER** and at all times relevant hereto, acted within the scope of that agency and/or employment.

5.     On or about July 9, 2014 at approximately 03:00, **NOELY PALENCIA** went into labor. She was 27-years old and 39 weeks and 6 days pregnant with her first child. Her prenatal course was unremarkable.

6.     On July 9, 2014 at approximately 22:50, **NOELY PALENCIA** was admitted to **ST. ALEXIUS MEDICAL CENTER** while still in early labor.

7.     On July 10, 2014 at approximately 11:20, Pitocin was administered to assist in the progression of labor.

8.     On July 10, 2014 at approximately 15:12, **NOELY PALENCIA** received a labor epidural.

26

9.     On July 10, 2014 at approximately 18:09, when **NOELY PALENCIA** was dilated to approximately 8 cm, artificial rupture of membranes was performed.

10.    On July 10, 2014 at approximately 19:45, **NOELY PALENCIA** reached complete cervical dilation. **NOELY PALENCIA** then began to push when the fetal occiput was at the -1 station.

11.    When the fetal occiput was at the -1 station, the Defendant, **CANDYCE GEARHART, R.N.**, applied aggressive perineal massage that resulted in an arterial rupture as documented in the operative summary.

12.    When the fetal head was at the +2 station, **NOELY PALENCIA** was bleeding heavily and **MARGARET NETTLETON's** attempts to repair **NOELY PALENCIA's** perineal laceration were unsuccessful.

13.    At the above-referenced time and place, **MARGARET NETTLETON, M.D.** called in the house officer, **MICHAEL RIERMAIER, M.D.**, for assistance. **NOELY PALENCIA** had been pushing for less than 50 minutes and the baby was not in distress when **MICHAEL RIERMAIER, M.D.** arrived.

14.    At the above-referenced time and place, the Defendants, **MARGARET NETTLETON, M.D.** and **MICHAEL RIERMAIER, M.D.**, performed an operative delivery using forceps.

15.    The female baby was delivered in cephalic position at 20:37 on July 10, 2014. She weighed 7 pounds 10 ounces, was 20.87 inches in length and had APGARS scores of 9 at both 1 minute and 5 minutes.

27

16.     Following delivery, Defendants **MARGARET NETTLETON, M.D.** and **MICHAEL RIERMAIER, M.D.** applied multiple sutures to **NOELY PALENCIA'S** vaginal laceration in the labor and delivery room and packed the vagina with Kerlix.

17.     Due to the severity of her vaginal laceration and nature of repair performed, **NOELY PALENCIA** was not discharged from **ST. ALEXIUS MEDICAL CENTER** until July 13, 2014.

18.     On September 24, 2014, **NOELY PALENCIA** was admitted to **ST. ALEXIUS MEDICAL CENTER** for surgery related to the vaginal laceration she sustained during delivery in July of 2014.

19.     At the above time and place, **NOELY PALENCIA'S** admission diagnosis was vaginal stenosis secondary to scarring from extensive vaginal laceration at the time of vaginal delivery.

20.     At the above time and place, **MARGARET NETTLETON, M.D.** performed a revision of vaginal scarring and laceration repair.

21.     At the above time and place, the following observations were documented by **MARGARET NETTLETON, M.D.** in her operative report:

    i.   Anteriorly there was a fibrous band of scar tissue from 9 o'clock to 3 o'clock;

    ii.  Posteriorly there was a fibrous band of scar tissue from 9 o'clock to 3 o'clock; and

    iii. There was only a small orifice between the anterior and posterior fibrous bands.

28

22.     That at all times relevant hereto, there existed a duty on the part of the Defendant, **CANDYCE GEARHART, R.N.,** to possess and apply the skill and knowledge of a reasonably well-qualified Registered Nurse and to provide care and treatment to **NOELY PALENCIA** in a manner which equaled or exceeded the applicable standard of care.

23.     That in disregarding her duty, the Defendant, **CANDYCE GEARHART, R.N.,** was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

      a.     Improperly performed perineal massage resulting in arterial laceration; and

      b.     Was otherwise careless and negligent.

24.     That as a direct and proximate result of one or more of the foregoing careless and negligent acts and/or omissions on the part of the Defendant, Improperly performed perineal massage resulting in arterial laceration, the Plaintiff, **NOELY PALENCIA,** sustained severe and permanent injuries resulting in personal and pecuniary loss.

**WHEREFORE,** the Plaintiff, **NOELY PALENCIA,** prays for judgment against the Defendant **CANDYCE GEARHART, R.N.,** in such amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate the Plaintiff for the injuries, losses and damages as hereinabove alleged.

<u>COUNT XII- CANDYCE GEARHART, R.N.</u>
(Loss of Consortium – MARVIN PALENCIA)

**NOW COMES** the Plaintiff, **MARVIN PALENCIA,** by and through his attorneys, **KRALOVEC, JAMBOIS & SCHWARTZ,** and complaining of the Defendant, **CANDYCE GEARHART, R.N.,** states as follows:

1-24.    That the Plaintiff, **MARVIN PALENCIA**, hereby re-alleges and incorporates paragraphs 1 through 24 of Count XI as and for paragraphs 1 through 24 of this Count XII as though fully set forth herein.

25.    That on and before July 10, 2014, the Plaintiff, **MARVIN PALENCIA**, was and continues to be the lawfully wedded husband of **NOELY PALENCIA**.

26.    That as a result of the injuries and damages sustained by **NOELY PALENCIA** on July 10, 2014, the Plaintiff, **MARVIN PALENCIA**, has in the past and will in the future be deprived of the past and future earnings, society, companionship and sexual relationship of his wife, **NOELY PALENCIA**.

**WHEREFORE**, the Plaintiff, **MARVIN PALENCIA**, prays for judgment against the Defendant, **CANDYCE GEARHART, R.N.**, in such amount in excess of this Court's jurisdictional requisite as will fairly and adequately compensate the Plaintiff for the injuries, losses and damages as hereinabove alleged.

Respectfully Submitted,

Kristina K. Green
*Attorney for the Plaintiffs*

Kristina K. Green
KRALOVEC, JAMBOIS & SCHWARTZ
60 West Randolph Street, 4th Floor
Chicago, Illinois 60601
Telephone:    (312) 782-2525
Facsimile:    (312) 855-0068
Firm No.      24797
E: kgreen@kjs-law.com

30

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

NOELY PALENCIA and MARVIN PALENCIA )
)
    Plaintiffs, )
)    No.
    vs. )
)
ST. ALEXIUS MEDICAL CENTER, )
MIDWEST OBSTETRICS & GYNECOLOGY, S.C., )
MICHAEL J. RIERMAIER, M.D., J.D., S.C., )
MARGARET NETTLETON, M.D. )
MICHAEL RIERMAIER, M.D., and )
CANDYCE GEARHART, R.N., )
)
    Defendants. )

## AFFIDAVIT OF DAMAGES
## PURSUANT TO SUPREME COURT RULE 222 (b)

5658

I, Kristina K. Green, states as follows:

1. I am one of the attorneys for the plaintiffs.

2. I am familiar with the extent of damages suffered by Plaintiffs.

3. I reasonably believe that the total money damages suffered by **NOELY PALENCIA** and **MARVIN PALENCIA** exceed $50,000.00 exclusive of costs.

## CERTIFICATION

    Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that, at this time, the statements set forth in this instrument are true and correct to the best of my knowledge, information and belief.

                                   Kristina K. Green

Kristina K. Green
KRALOVEC, JAMBOIS & SCHWARTZ
60 West Randolph Street, 4th Floor
Chicago, Illinois 60601
Telephone:    (312) 782-2525
Facsimile:    (312) 855-0068
Firm No.    24797
E: kgreen@kjs-law.com

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| NOELY PALENCIA and MARVIN PALENCIA | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. |
| vs. | ) |
| | ) |
| ST. ALEXIUS MEDICAL CENTER, | ) |
| MIDWEST OBSTETRICS & GYNECOLOGY, S.C., | ) |
| MICHAEL J. RIERMAIER, M.D., J.D., S.C., | ) |
| MARGARET NETTLETON, M.D. | ) |
| MICHAEL RIERMAIER, M.D., and | ) |
| CANDYCE GEARHART, R.N., | ) |
| | ) |
| Defendants. | ) |

### ATTORNEY AFFIDAVIT

I, Kristina K. Green, an attorney licensed to practice law by the State of Illinois, under the penalties of perjury, do hereby state:

1. That I have reviewed the medical records of **NOELY PALENCIA'S** care and treatment rendered at **ST. ALEXIUS MEDICAL CENTER,** and

2. That I have had the abovementioned records reviewed by and have sought and received the consultation of a physician licensed to practice medicine in all its branches and specializing in obstetrics and gynecology.

3. That I reasonably believe the consulting physician to be very knowledgeable in the care and treatment required by and rendered to **NOELY PALENCIA.**

4. That the consulting physician has reviewed the aforementioned medical records and has drawn the conclusion therefrom that, **ST. ALEXIUS MEDICAL CENTER, MARGARET NETTLETON, M.D., MICHAEL J. RIERMAIER, M.D., MIDWEST OBSTETRICS & GYNECOLOGY, S.C., MICHAEL J. RIERMAIER, M.D., J.D., S.C.,** and **CANDYCE GEARHART, R.N.** rendered negligent treatment to **NOELY PALENCIA.**

5. That the consulting physician has advised me that there is a reasonable and meritorious cause for filing a claim for malpractice against **T. ALEXIUS MEDICAL CENTER, MARGARET NETTLETON, M.D., MICHAEL J. RIERMAIER, M.D., MIDWEST OBSTETRICS & GYNECOLOGY, S.C., MICHAEL J. RIERMAIER, M.D., J.D., S.C.,** and **CANDYCE GEARHART, R.N.**

1

6.    That on the basis of the written Physician's Report attached, the discussions between myself and the consulting physician, and my professional legal opinion, there is a reasonable and meritorious cause for filing this Complaint.

FURTHER AFFIANT SAYETH NOT

Respectfully submitted,

_____
Kristina K. Green

SUBSCRIBED AND SWORN to before
me on this ___ day of _____, 2016.

_____
NOTARY PUBLIC

> OFFICIAL SEAL
> MICHALINE J. ROBITZ
> Notary Public, State of Illinois
> My Commission Expires 6-25-2017

Kristina K. Green
KRALOVEC, JAMBOIS & SCHWARTZ
60 West Randolph Street, 4th Floor
Chicago, Illinois 60601
Telephone:     (312) 782-2525
Facsimile:     (312) 855-0068
Firm No.       24797
E: kgreen@kjs-law.com

2

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

NOELY PALENCIA and MARVIN PALENCIA )
)
   Plaintiffs, )
)    No.
  vs. )
)
ST. ALEXIUS MEDICAL CENTER, )
MIDWEST OBSTETRICS & GYNECOLOGY, S.C., )
MICHAEL J. RIERMAIER, M.D., J.D., S.C., )
MARGARET NETTLETON, M.D. )
MICHAEL RIERMAIER, M.D., and )
CANDYCE GEARHART, R.N., )
)
   Defendants. )

## REPORT OF REVIEWING HEALTHCARE
## PROFESSIONAL PURSUANT TO 735 ILCS 5/2-622

  1.  The undersigned is licensed to practice medicine in all of its branches and has

practiced medicine within the last six (6) years in the same area of medicine at issue in this case,

specifically obstetrics and gynecology.

  2.  The undersigned has reviewed medical records of **NOELY PALENCIA** from

**ST. ALEXIUS MEDICAL CENTER** and **WOMEN'S CENTER FOR WELLNESS.**

  3.  The undersigned is knowledgeable and experienced in the issues involved in this

case, including the management and repair of vaginal arterial lacerations during delivery.

  4.  **NOELY PALENCIA** was a 27-year old female who went into labor on July 9,

2014 when she was 39 weeks and 6 days pregnant with her first child. Her prenatal course was

unremarkable.

  5.  **NOELY PALENCIA** was admitted to labor and delivery at **ST. ALEXIUS**

**MEDICAL CENTER** late on July 9, 2014. She was given Pitocin and received an epidural.

6.     When **NOELY PALENCIA** WAS dilated to 8 cm her water was broken by artificial means. She reached complete cervical dilation at approximately 19:45 on July 10, 2014.

7.     **NOELY PALENCIA** began to push when the fetal occiput was at the -1 station. At that time, it is documented by **MARGARET NETTLETON, M.D.** that the labor and delivery nurse, **CANDYCE GEARHART, R.N.,** applied aggressive perineal massage that resulted in an arterial rupture.

8.     When the fetal head was at the +2 station, **MARGARET NETTLETON** attempted to repair the perineal laceration.  She called for the house officer, **MICHAEL RIERMAIER, M.D.** for assistance.

9.     **NOELY PALENCIA** had been pushing for less than 50 minutes when **MICHAEL RIERMAIER, M.D.** arrived and the fetus was not documented to be in any distress.

10.     At the above-referenced time and place, **MARGARET NETTLETON, M.D.** and **MICHAEL RIERMAIER, M.D.** performed an operative delivery using forceps and likely exacerbating the patient's vaginal laceration.

11.     The female infant was delivered in cephalic position at 20:37 on July 10, 2014. The infant was not abnormally large, weighing 7 pounds 10 ounces and was only 20.87 inches in length. The infant had APGARS scores of 9 at both 1 minute and 5 minutes and appeared healthy.

12.     Following delivery, **MARGARET NETTLETON, M.D.** and **MICHAEL RIERMAIER, M.D.** applied multiple sutures to the patient's vaginal laceration, extending nearly the entire length of the vaginal opening. The patient's vagina was then packed with Kerlix.

13.     **NOELY PALENCIA** was discharged several days later. No further attempts to repair the patient's vaginal laceration were made.

14.     On September 24, 2014, **NOELY PALENCIA** was admitted to **ST. ALEXIUS MEDICAL CENTER** for revision of the laceration repair performed following delivery.

15.     The patient's admission diagnosis was documented as vaginal stenosis secondary to scarring from extensive vaginal laceration at the time of vaginal delivery.

16.     **MARGARET NETTLETON, M.D.** performed the "revision of vaginal scarring and laceration repair." In her operative report she made the following observations: anteriorly there was a fibrous band of scar tissue from 9 o'clock to 3 o'clock; posteriorly there was a fibrous band of scar tissue from 9 o'clock to 3 o'clock; and there was a small orifice between the anterior and posterior fibrous band.

17.     The undersigned is of the opinion that **MICHAEL RIERMAIER, M.D.** breached the standard of care for a similarly situated physicians specializing in obstetrics and gynecology in that he:

      a. Failed to properly supervise the nursing staff;

      b. Inappropriate timing of operative delivery and instruments involved; and

      c. Failed to perform a proper repair of the patient's vaginal laceration.

18.     The undersigned is of the opinion that **MARGARET NETTLETON, M.D.** breached the standard of care for a similarly situated physicians specializing in obstetrics and gynecology in that she:

      a. Failed to properly supervise the nursing staff;

      b. Inappropriate timing of operative delivery and instruments involved; and

      c. Failed to perform a proper repair of the patient's vaginal laceration.

3

19.     The undersigned is of the opinion that **CANDYCE GEARHART, R.N.** breached the standard of care for a similarly situated labor and delivery nurses in that she:

   a.  Improperly performed perineal massage causing an arterial vaginal laceration.

20.     The undersigned is of the opinion that **ST. ALEXIUS MEDICAL CENTER,** by and through its agents, servants, and/or employees, whether actual or apparent, including but not limited to **MICHAEL RIERMAIER, M.D., MARGARET NETTLETON, M.D.** and **CANDYCE GEARHART, R.N.,** breached the standard of care for a similarly situated healthcare facilities in that it:

   a.  Failed to properly supervise the nursing staff;

   b.  Inappropriate timing of operative delivery and instruments involved;

   c.  Failed to perform a proper repair of the patient's vaginal laceration; and

   d.  Improperly performed perineal massage causing an arterial vaginal laceration.

21.     The undersigned is of the opinion that **MIDWEST OBSTETRICS & GYNECOLOGY, S.C.,** by and through its agent, servant, and/or employee, whether actual or apparent, including but not limited to **MARGARET NETTLETON, M.D.,** breached the standard of care for a similarly situated healthcare providers in that it:

   a.  Failed to properly supervise the nursing staff;

   b.  Inappropriate timing of operative delivery and instruments involved; and

   c.  Failed to perform a proper repair of the patient's vaginal laceration.

22.     The undersigned is of the opinion that **MICHAEL J. RIERMAIER, M.D., J.D., S.C.,** by and through its agent, servant, and/or employee, whether actual or apparent, including

4

but not limited to **MICHAEL J. RIERMAIER, M.D.,** breached the standard of care for a similarly situated healthcare providers in that it:

      a.  Failed to properly supervise the nursing staff;

      b.  Inappropriate timing of operative delivery and instruments involved; and

      c.  Failed to perform a proper repair of the patient's vaginal laceration.

23.      The undersigned is of the opinion that the above-referenced negligent acts and/or omissions, alone and in concert, were the proximate cause of the Plaintiff's injuries.

24.      For the reasons set forth above, the undersigned is of the opinion that there is a reasonable and meritorious cause for filing the above-captioned lawsuit against **MICHAEL RIERMAIER, M.D., MARGARET NETTLETON, M.D., CANDYCE GEARHART, R.N., ST. ALEXIUS MEDICAL CENTER, MIDWEST OBSTETRICS & GYNECOLOGY, S.C.,** and **MICHAEL J. RIERMAIER, M.D., J.D., S.C.**

_____

Kristina K. Green
KRALOVEC, JAMBOIS & SCHWARTZ
60 W. Randolph Street, 4th Floor
Chicago, Illinois 60601
T:    312-782-2525
F:    312-855-0068
Firm No.: 24797
E: kgreen@kjs-law.com

5

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

NOELY PALENCIA and MARVIN PALENCIA )
)
Plaintiffs, )
)
vs. )                                         No.
)
ST. ALEXIUS MEDICAL CENTER, )
MIDWEST OBSTETRICS & GYNECOLOGY, S.C., )
MICHAEL J. RIERMAIER, M.D., J.D., S.C., )
MARGARET NETTLETON, M.D. )
MICHAEL RIERMAIER, M.D., and )
CANDYCE GEARHART, R.N., )
)
Defendants. )

## JURY DEMAND

The undersigned demands a trial by jury.

BY: _____
Kristina K. Green

Kristina K. Green
KRALOVEC, JAMBOIS & SCHWARTZ
60 West Randolph Street, 4th Floor
Chicago, Illinois 60601
Telephone:    (312) 782-2525
Facsimile:     (312) 855-0068
Firm No.       24797
E: kgreen@kjs-law.com